UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:                                          Case No. 09-72986

ERNEST KENT COMBS,                              Chapter 13

            Debtor.                             Judge Thomas J. Tucker

_____ /

## AMENDED OPINION REGARDING THE MOTION FOR RELIEF FROM STAY FILED BY PAMELA L. MYTNICK[**]

The Debtor in this Chapter 13 case, Ernest Combs, is a retired police officer and is receiving a monthly pension benefit. The case is before the Court on the motion for relief from stay filed by the Debtor's ex-wife, Pamela Mytnick.[1] Ms. Mytnick claims to have an interest in Debtor's pension. She seeks stay relief for two purposes: (1) to seek from the state court an Eligible Domestic Relations Order ("EDRO"), as contemplated in the parties' consent judgment of divorce; and (2) to try to collect her past due share of the pension benefits received by the Debtor.

Mytnick's motion contends that she obtained a property interest in Debtor's police pension in 1999 upon entry of the parties' consent judgment of divorce. Debtor argues that Mytnick never obtained a property interest in the pension, because Michigan law requires that an EDRO be entered by the state court and filed with the pension plan, and that this be done before the pension comes into pay status. According to Debtor, his pension was already in pay status when the consent judgment of divorce was entered, so no valid EDRO could ever be entered. And, Debtor points out, no EDRO has ever been entered.

_____

[**] This amended opinion amends the opinion filed on August 31, 2010 (Docket # 83).

[1] Docket # 22.

The Court concludes that under Michigan law, the entry of the 1999 consent judgment itself transferred to Mytnick a property interest in Debtor's pension. This transfer occurred even though an EDRO has never been entered. Mytnick's motion for relief from the automatic stay will be granted, to permit Mytnick to pursue appropriate relief in the state court.

## I. Facts

The relevant facts are undisputed. The Debtor was a police officer for the City of Ferndale, Michigan. He was married to Ms. Mytnick, but the parties divorced in 1999. The Oakland County Circuit Court entered a consent judgment of divorce, on November 9, 1999.[2] Sometime before that judgment was entered, Debtor had retired from his job as police officer, and began receiving a monthly pension benefit.

The consent judgment awarded Mytnick "as her sole and separate property . . . [o]ne-half [the] marital interest" in Debtor's pension with the City of Ferndale, to "be transferred to [Mytnick] pursuant to an EDRO."[3] The consent judgment recited that the pension was "in pay position . . . ."[4] The consent judgment ordered the parties to "share the cost of preparation of the EDROs required." And Debtor was further ordered to pay Mytnick $855 per month "until such time as the EDRO takes effect . . . ."[5]

No EDRO was ever prepared or entered. Instead, Debtor simply paid Mytnick $855 per month from his monthly pension benefit, for more than nine years. Debtor stopped making these

---

[2] Docket # 33, Exhibit A.

[3] *Id.* at 7, 8 ¶ (7).

[4] *Id.* at 8, ¶ (7).

[5] *Id.* at 10.

2

monthly payments on March 1, 2009,[6] even though he has continued to receive his full monthly

pension benefit.  Debtor filed his Chapter 13 petition on October 26, 2009.[7]  In Schedule F,

Debtor listed Mytnick as an unsecured, nonpriority creditor.[8]  According to Debtor's Schedule I,

Debtor receives a pension benefit of $3,000 per month.[9]

The Court held a hearing on Mytrnick's stay-relief motion, then ordered further briefing.[10]

The Court then held a second hearing, during which the Court granted Mytnick's request to file

supplemental citations, and permitted Debtor to respond.[11]  The motion is now ready for decision.

## II.  Jurisdiction

The Court has jurisdiction under 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and E.D. Mich.

LBR 83.50(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## III.  Discussion

### A.  Stay-relief standard

Mytnick seeks relief from stay under 11 U.S.C. § 362(d)(1), for "cause."  Under this

section, " 'courts must determine whether discretionary relief is appropriate on a case by case

basis.' "  *In re J & M Salupo Dev. Co., Inc.,* 388 B.R. 809, 812 (Bankr. N.D. Ohio 2008) (quoting

---

[6]  Docket # 25, Debtor's Answer to Motion, ¶ 5; Docket # 22, Mytnick's Motion for Relief from the Automatic Stay, ¶ 5.

[7] Docket # 1.

[8]  *Id.*, Schedule F.

[9] *Id.*, Schedule I.

[10]  Docket # 30.

[11]  Docket # 39.  Mytnick filed a further supplemental citation on August 11, 2010 (Docket # 79).

3

*Laguna Associates L.P. v. Aetna Cas. & Surety Co. (In re Laguna Associates L.P.)*, 30 F.3d 734, 737 (6th Cir. 1994)). "As used in § 362(d)(1), the term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Indian River Estates, Inc.*, 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003)(citation omitted). "In determining whether cause exists, the bankruptcy court should base its decision on the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *In re Plastech Engineered Products, Inc.*, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008)(quoting *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir.1995)).

### B. The merits

The general rule in bankruptcy cases is that "[u]nless a federal interest is at issue, property rights are defined by state law." *French v. Frey (In re Bergman)*, 467 F.3d 536, 538 (6th Cir. 2006) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)). The parties agree that Michigan law governs Mytnick's claim that she has a property interest in Debtor's police pension. The issue is whether Mytnick obtained a property interest in Debtor's pension, in the absence of any EDRO. Mytnick argues that the consent judgment itself granted her a property interest in Debtor's pension benefits. Mytnick asks this Court to lift the automatic stay, in part, so she can now obtain entry of an EDRO in the state court, as contemplated by the consent judgment of divorce.

Debtor contends that under Michigan law, Mytnick does not have an interest in Debtor's pension because Mytnick did not obtain entry of an EDRO. And, Debtor argues, no EDRO could ever be entered because Debtor's pension was already in pay status when the consent judgment of divorce was entered in 1999.

4

For the following reasons, the Court holds that the entry of the 1999 consent judgment, in and of itself, transferred a property interest in Debtor's pension to Mytnick, notwithstanding Mytnick's failure to obtain an EDRO. Moreover, each time Debtor received his monthly pension benefit, he held Mytnick's $855 share of that monthly benefit under a constructive trust, for Mytnick's benefit, until he paid it to Mytnick. This is so with respect to the time periods both before and after the filing of Debtor's bankruptcy petition.

1. **Under Michigan law, the entry of the consent judgment of divorce, without more, transferred to Mytnick a separate ownership interest in Debtor's pension**.

Under Michigan law, a spouse's right to vested pension benefits that accrued during marriage "shall be considered part of the marital estate" and distributed by a state court upon divorce. MICH. COMP. LAWS ANN. § 552.18(1). "Each judgment of divorce . . . shall determine all rights, including any contingent rights, of the husband and wife in and to . . . "[a]ny vested pension . . . benefits." MICH. COMP. LAWS ANN. § 552.101(4)(a). Furthermore, "pensions may be distributed through . . . [a] property division [.]" *Pickering v. Pickering*, 706 N.W.2d 835, 840 (Mich. Ct. App. 2005) (citation omitted).

Under MICH. COMP. LAWS ANN. § 552.401, a state court "may include in any decree of divorce . . . appropriate provisions awarding to a party . . . a portion of property, either real or personal, owned by his or her spouse" in an equitable manner, and that "decree, upon becoming final, shall have the same force and effect as a . . . bill of sale of the personal property[.]" The Michigan Supreme Court recently held that under § 552.401, "[a] court may provide for the distribution of property in a divorce judgment, and when it enters, the judgment has the same effect as a deed or a bill of sale." *Estes v. Titus*, 751 N.W.2d 493, 497 (Mich. 2008). For this

5

reason, *Estes* held that for purposes of Michigan's Uniform Fraudulent Transfer Act,[12] a divorce

judgment "effectuates a transfer" of property upon entry. *Id.*

Under § 552.401 and *Estes*, therefore, when a divorce judgment purports to transfer a

separate ownership interest in a pension from one spouse to the other, that ownership interest

transfers when the divorce judgment is entered.

That is what happened in this case. The 1999 consent judgment stated the following:

> IT IS FURTHER ORDERED that Wife is awarded as her sole and
> separate property, free and clear of any interest, right, title or claim
> of Husband, the following:
> . . .
>   (7) One-half of marital interest (including the years
> purchased during the marriage) of Husband's pension from the
> City of Ferndale currently in pay position with the City of
> Ferndale, which shall be transferred to Wife pursuant to an EDRO.
> Both parties shall be entitled to 100% of the survivor benefits
> payable under the Plan, their share of all post-retirement increases,
> and any other standard provisions. The parties shall share the cost
> of preparation of the EDROs required in this Judgment.
> . . .
>   IT IS FURTHER ORDERED that until such time as the
> EDRO takes effect which pays to Wife her share of the City of
> Ferndale pension, Husband shall pay to Wife the amount of $855
> per month on the first day of every month commencing October 1,
> 1999. For income tax purposes, said payments shall be treated as
> tax deductible to Husband and taxable to Wife.[13]

Under the terms of the consent judgment, therefore, Mytnick obtained the following

ownership interests in Debtor's pension:

---

[12]  MICH. COMP. LAWS ANN. § 566.31, *et. seq.*

[13] Consent Judgment of Divorce at 7, 8, 10 (attached to Mytnick's motion, Docket # 22).

6

- effective immediately upon entry of the divorce judgment: $855 of each monthly

  pension payment Debtor received thereafter, until an EDRO was entered and became

  effective; and then,

- effective when (and if) an EDRO was entered and became effective, and replacing the

  $855 per month ownership interest: one-half of the Debtor's marital interest in the

  pension, including one-half of the marital interest of the monthly periodic pension

  payments owing under the pension.

The general rule in Michigan, that the entry of the divorce judgment, without more, can transfer an interest in a pension, is consistent with the majority rule applied in other federal and state courts. One illustrative case is *Bigelow v. Brown* (*In re Brown*), 168 B.R. 331 (Bankr. N.D. Ill. 1994). In that case, an Illinois court's divorce judgment awarded the plaintiff-wife fifty percent of the husband's pension, and ordered the entry a Qualified Domestic Relations Order ("QDRO"). Later, when the pension plan rejected the QDRO, the state court ordered the husband to pay the wife directly. *Bigelow*, 168 B.R. at 332. But the husband did not pay, and seven years after the divorce, he filed a petition under Chapter 7, listing the obligation to his ex-wife as an unsecured, nonpriority claim. The ex-wife objected to the discharge of her interest and sought to lift the automatic stay, arguing "that as a result of the divorce decree, her interest in the pension plan is her sole and separate property" and any funds received by the husband were held by him as constructive trustee. The bankruptcy court held that, because under Illinois law, pensions created during marriage are part of the marital estate and subject to division, "upon entry of a judgment of divorce, ownership vests in the spouse to whom such property has been distributed." *Id.* at 334 (citation omitted). According to the *Bigelow* court, its holding reflected

7

"[t]he majority view among courts considering the question in the bankruptcy context . . . ." *Id.* (collecting cases). The court also noted "that one advantage of declaring that pension awards are the separate property of the financially dependent spouse is to discourage . . . supporting spouses [from trying] to avoid marital obligations by declaring bankruptcy." *Id.* at 336-37 (citation omitted).

Many other bankruptcy courts have applied this rule. *See*, *e.g.*, *Brown v. Pitzer* (*In re Brown*), 249 B.R. 303, 308 (S.D. Ind. 2000) (affirming bankruptcy court holding that under Indiana law, which required final division of property at time of divorce, ex-wife's fifty percent interest in husband's pension was "her sole and separate property interest" that "vested upon the issuance of the finalized divorce decree"); *McGraw v. McGraw (In re McGraw)*, 176 B.R. 149, 151 (Bankr. S.D. Ohio 1994) (holding that under Ohio divorce decree, granting wife thirty-six and one-half percent of benefits husband was then collecting, wife "became the equitable owner . . . and that percentage became her sole and separate property"); *McQuade v. McQuade (In re McQuade)*, 232 B.R. 810, 814 (Bankr. M.D. Fla. 1999) (concluding that, where husband was collecting benefits from police pension plan pre-divorce, ex-wife's interest of $2,142.50 awarded in New York domestic relations order "vested as of the date of the dissolution of their marriage"); *Resare v. Resare (In re Resare)*, 142 B.R. 44, 46 (Bankr. D.R.I. 1992), *aff'd* 154 B.R. 399 (D.R.I. 1993) (where husband was collecting benefits at time of divorce, state court divorce decree stating ex-wife "shall be entitled" to thirty-five percent of husband's pension "granted the wife an immediate and absolute property interest in the pension, at the same time divesting the former husband of any further ownership interest in that portion of the pension awarded the wife").

8

The Sixth Circuit reached the same result, in a case applying Ohio law.  In *McCafferty v. McCafferty* (*In re McCafferty*), 96 F.3d 192 (6th Cir. 1996), the court considered an Ohio divorce decree awarding the wife one-half of the husband's state teachers' pension.  *McCafferty*, 96 F.3d at 193.  The husband filed for Chapter 7 bankruptcy protection seven months after the divorce and listed his ex-wife as an unsecured creditor.  After a state court clarified that the pension split was a division of property, the bankruptcy court found that the husband's obligation to pay his wife was a dischargeable debt.  *Id.* at 194.  After examining relevant state law, the Sixth Circuit concluded that "the Ohio divorce order awarded [the wife] a separate property interest in a portion" of the husband's pension benefits.  *Id.* at 197; *accord Hines v. Hines* (*In re Hines*), 356 B.R. 786, 2006 WL 3956493 (B.A.P. 6th. Cir. 2006) (unpublished table decision) (Chapter 13 case where court noted that "*McCafferty* is controlling" and held that Ohio divorce decree giving husband his pension "free and clear" except for requirement to pay wife $12,500 as her "netted share" meant wife "has a separate property interest in Debtor's [husband's] retirement plan").

Similarly, the court in *Dewey v. Dewey*, 525 N.W.2d 85 (Wis. Ct. App. 1994), "concur[ed] with the majority of the federal courts that hold that a division of a pension plan pursuant to a divorce decree . . . creates two separate property interests that become vested at the moment the decree is entered."  *Dewey*, 525 N.W.2d at 87 (citing, among many others, *Bigelow*).  In *Dewey*, the ex-wife received a property settlement that included a one-half interest in the husband's General Motors pension.  A QDRO, while called for in the divorce order, was never entered before the husband filed bankruptcy and received a discharge.  *Id.* at 86.  The husband retired post-discharge and began collecting full benefits but refused to sign a QDRO drafted by the ex-wife.  Looking to state law requiring courts to divide all marital property "and divest and

9

transfer the title of any such property accordingly[,]" the court found that the divorce "judgment vested in [the ex-wife] a one-half interest in the pension at the moment the divorce decree was entered." *Id.* at 87 (internal quotation marks omitted). The fact that a QDRO had not entered yet had "no effect upon [the wife's] interest in the pension." *Id.* at 88, *see also Brogan v. Brogan*, 525 S.E.2d 618, 622 (Va. Ct. App. 2000) (divorce decree directing husband to pay one-half of federal civil service disability benefits directly to ex-wife was not discharged in husband's bankruptcy because decree "was sufficient . . . to give wife a separate property interest in the husband's future benefits" (discussing, among others, *Resare*, *supra*, and *McGraw*, *supra*)).

These cases all support the application of Michigan's general rule in this case. Under MICH. COMP. LAWS ANN. § 552.401 and *Estes*, the entry of the divorce judgment in this case transferred a separate ownership interest in Debtor's pension to Mytnick. And, as in the *Dewey* case, this transfer occurred without the entry of an EDRO. *See also Petty v. Petty (In re Petty)*, 333 B.R. 472, 478 (Bankr. M.D. Fla. 2005) (holding that where the husband was directed by state court divorce judgment to pay wife 13.5% share of his military pension, "[t]he vesting of the [wife's] property right is not dependent upon a supplemental order instructing the pension plan administrator to make the payments directly to the former spouse").

As discussed below, the absence of an EDRO in this case only means that the City of Ferndale pension plan has no obligation to pay Mytnick directly. However, as between Debtor and Mytnick, the consent judgment of divorce was a binding and enforceable transfer of a property interest.

2. **Michigan's EDRO Act governs the relationship between Mytnick and the pension plan, but does not create an exception to the general rule in Michigan that a transfer of property is effective upon entry of a divorce judgment.**

10

Debtor argues that under Michigan's EDRO Act, Mytnick could not obtain any interest in his pension until an EDRO was entered. Debtor relies on MICH. COMP. LAWS ANN. § 38.1703. That section states, in relevant part, that "an alternate payee is entitled to an actual interest in a share of a benefit that is or will become payable to a participant, if so provided in an EDRO filed with the retirement system."[14] According to Debtor, this statute prevents Mytnick from having an interest in his pension until she has an EDRO entered. Debtor also cites *Mixon v. Mixon*, 602 N.W.2d 406 (Mich. Ct. App. 1999). In that case the court stated that because the plaintiff there was "a municipal employee, the parties must file an EDRO with the municipal retirement system to allow defendant to receive an interest in plaintiff's pension benefits." *Mixon*, 602 N.W.2d at 409 (citing the EDRO Act). Debtor's arguments are without merit.

Here it is undisputed that the state court never entered an EDRO for filing with the pension plan. The lack of an EDRO, however, only means that the City of Ferndale pension plan administrator had no obligation to pay Mytnick directly any part of the pension benefit. Under MICH. COMP. LAWS ANN. § 38.1684(2), any right Debtor has in his pension "is subject to an award by a court under" MICH. COMP. LAWS ANN. § 552.18, to the EDRO Act, and "to any other domestic relations order of a court pertaining to alimony or child support." Thus, Debtor's pension rights not only are subject to an EDRO, but also are subject to a court order under § 552.18. The 1999 consent judgment of divorce is such an order.

Section 38.1703, part of the EDRO Act, permits and requires that payments be made by the pension plan directly to an alternate payee, if the pension plan receives a valid EDRO. In this

---

[14] An "alternate payee" includes a participant's former spouse named in an EDRO. MICH. COMP. LAWS ANN. § 38.1702(a).

11

case, the clear intent of the state court and the parties, expressed in the 1999 consent judgment, was to enter an EDRO. Had that intent been acted upon, and an EDRO filed, the plan administrator may have been obligated under the EDRO Act to pay Mytnick her pension share directly. But whether the plan administrator was obligated to pay Mytnick directly is not fully dispositive of her property rights. The EDRO Act does not alter the fact that the consent judgment of divorce itself made a transfer to Mytnick of a separate ownership interest in Debtor's pension rights, as discussed above.

Further, the holding of *Mixon* is not as broad as Debtor suggests. The actual issue in *Mixon* was whether the trial court erred by failing to expressly provide in the divorce judgment for the entry of an EDRO, as plaintiff requested. *Mixon*, 602 N.W.2d at 407, 409. The court in *Mixon* relied on § 38.1703 for its statement that "the parties must file an EDRO with the municipal retirement system to receive an interest in plaintiff's pension benefits." *Id.* at 409. Reading §§ 38.1703 and 552.101(4) together, the court concluded that those statutes "required the trial court to include an EDRO in the parties' judgment of divorce when requested by the plaintiff." *Id*.

The Court does not read *Mixon* so broadly as to alter Michigan's general rule, discussed in section III-B-1 of this opinion above, that a judgment of divorce may itself transfer an interest in a spouse's pension rights to the other spouse, as between the two spouses.

Debtor's citation to the unpublished Michigan case of *Weaks v. City of Lincoln Park*, No. 280181, 2009 WL 323476 (Mich. Ct. App. Feb. 10, 2009), offers no further support to his position. First, because it is unpublished, the *Weaks* case is not precedential under Michigan Court Rule 7.215(C). Second, the issue in *Weaks* was whether the language of a validly entered

12

EDRO allowed the plaintiff-ex-wife to receive health benefits under her ex-husband's pension plan. 2009 WL 323476, at *1. The *Weaks* court cited to *Mixon* for the proposition that an EDRO must be filed with the public pension plan "to allow [the ex-wife] to receive an interest in her ex-husband's pension benefits[.]" *Id.* Like *Mixon*, at most, the *Weaks* case simply reiterates that the EDRO Act deals with the obligation of a pension plan to pay pension benefits directly to an alternate payee. If anything, *Weaks* supports this conclusion regarding EDRO Act's purpose: "Clearly, the purpose of an EDRO is to direct a plan administrator which of a participant's benefits, in what amount, are to be paid to an alternate payee." *Id.* at *2. This purpose has nothing to do with Mytnick's ownership interest in Debtor's pension at the time the consent judgment entered. Rather, the purpose pertains to the relationship between an alternate payee like Mytnick and the pension plan.

This Court's conclusion, that the lack of an EDRO does not defeat the property interest of a spouse in her former spouse's pension, is consistent with similar cases from other jurisdictions. In *Bigelow*, *supra*, the original QDRO was rejected by the pension plan and the debtor-husband then filed bankruptcy before a valid QDRO could be filed. 168 B.R. at 332.[15] The debtor argued that the Illinois divorce judgment created only a debt, and that any property right that may

_____

[15] Private pension or retirement benefits plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq*. ERISA is similar to Michigan's Public Employee Retirement Benefit Protection Act, MICH. COMP. LAWS ANN. § 38.1681, *et. seq*., in that ERISA includes a strict anti-alienation provision, 29 U.S.C. § 1056(d)(1), that is subject to a valid QDRO, 29 U.S.C. § 1056(d)(3)(A). Thus, cases citing to ERISA-governed plans are instructive here. In fact, ERISA and non-ERISA cases often cite to the other for support. *See*, *e.g.*, *Brown v. Pitzer (In re Brown)*, 249 B.R. 303, 309, 311 (S.D. Ind. 2000) (fact that persuasive case involved QDRO simply supported the conclusion that a wife's share of non-ERISA pension was separate property); *Debolt v. Comerica Bank (In re Debolt)*, 177 B.R. 31, 36-38 (Bankr. W.D. Pa. 1994) (Chapter 13 QDRO case where court examined cases involving public and military pensions to support its finding that Ohio divorce decree awarding her one-half of debtor's ERISA governed pension was her "sole and separate property").

13

have arisen could "only be 'perfected'" by the filing of a valid QDRO. *Id.* The bankruptcy court

rejected this argument, holding that "the timing of the the entry of a valid QDRO is irrelevant in

the determination of [the ex-wife's] rights" because "upon entry of the divorce judgment, the

benefits became the sole and separate property of the [ex-wife]." *Id.* at 335. The court noted that

due to the lack of a valid pre-petition QDRO, the ex-wife "had no recognizable *legal right*" to

her share of the pension, but that did not alter the fact that the divorce decree granted her "an

*equitable interest*" in the pension. *Id.* at 335-36 n.6 (emphases in original) (citation omitted).

Similarly, in *Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815 (9th Cir. 1997), a

QDRO was rejected by the pension plan, and the husband then filed his Chapter 7 bankruptcy

before an amended QDRO was filed. *Gendreau*, 122 F.3d at 817. In a declaratory action

brought by the husband to determine the dischargeability of the ex-wife's claim, the Ninth

Circuit held that the ex-wife had "at least . . . a right to obtain a proper QDRO that could not be

discharged" in the bankruptcy case, because the state court divorce decree established her interest

in the pension. *Id*. at 818; *see also Petty*, 333 B.R. at 477-78 (same ruling with respect to

debtor's military pension).

Mytnick suggests that "it was impossible for a true EDRO to be entered" under the facts

of this case, because Debtor was already receiving his monthly pension benefit when the 1999

consent judgment was entered. The EDRO Act requires that an EDRO must be "filed before" a

plan participant's "retirement allowance effective date." MICH. COMP. LAWS ANN.

§ 38.1702(e)(*viii*). The term "retirement allowance effective date" is undefined in the EDRO

Act, but it may refer to the date a participant begins collecting benefits. Here, Debtor was

already collecting benefits at the time the 1999 consent judgment was entered. But Mytnick and

14

the Debtor, as parties to the 1999 consent judgment, and the state court, all apparently believed in

1999 that it was still possible to enter a valid EDRO. This Court expresses no view on that issue,

because it is unnecessary to do so. That is an issue for the state court to decide.[16]

In sum, the EDRO Act merely creates a means by which to obligate a pension plan to pay

an alternate payee such as Mytnick directly. The EDRO Act does not alter Michigan's general

rule that property transfers in a divorce judgment are effective upon entry of that judgment.

>    **3.  Because Mytnick has a separate ownership interest in $855 of the monthly
>         pension payments received by Debtor, he holds those funds in a constructive
>         trust for the benefit of Mytnick.**

In granting Mytnick a separate ownership interest in Debtor's pension, the 1999 consent

judgment, ordered Debtor to pay Mytnick $855 per month until an EDRO was entered. The

parties agree that Debtor complied with this obligation for more than nine years, before

unilaterally ceasing payments in March 2009. The Court concludes that each month when

Debtor receives his monthly pension payment, he holds $855 of that payment in a constructive

trust, for the benefit of Mytnick, until Debtor pays that money to Mytnick.

Illustrative of this constructive trust application is *Bush v. Taylor*, 912 F.2d 989 (8th Cir.

1990). In that case, the husband and the ex-wife were divorced in the state of Washington. The

decree awarded the wife as her " 'sole and separate property' one-half" of the husband's

government pension. *Bush*, 912 F.2d at 990. After the wife brought additional state court

proceedings to enforce this decree, the husband filed a Chapter 7 petition. The bankruptcy court

---

[16] Mytnick also suggests that § 38.1702(e) also permits an alternative method for entering an
EDRO for situations where a participant is collecting benefits, namely "a general Domestic Relations
Order." *Id.* Mytnick reiterated this at the February 4, 2010 hearing but could not, at the time, cite any
statute or case law supporting the position. Nor do Mytnick's post-hearing, supplemental citations
provide support for this alleged alternate method. Beyond this, however, the Court expresses no view on
this issue. It is a matter for the state court to decide.

15

and the district court both held that a constructive trust existed in favor of the wife.  *Id.* at

991-92.   The Eighth Circuit agreed, holding that the wife's "share of the pension was her sole

and separate property and [the defendant] received it . . . as a constructive trustee for her benefit."

*Id.* at 993; *see also Bigelow*, 168 B.R. at 335 (where debtor-spouse had possession of pension

payments he "holds that property interest of the nondebtor spouse as a constructive trustee for the

benefit of the nondebtor spouse"); *Dahlin v. Dahlin (In re Dahlin)*, 94 B.R. 79 (Bankr. E.D. Va.

1988), *aff'd*, 911 F.2d 721 (4th Cir. 1990) (wife's interest in husband's military pension "benefits

became the sole and separate property of [the wife] and the debtor[-husband] only received

benefits as trustee"); *Britten v. Britten (In re Britten)*, 227 B.R. 820, 821 (Bankr. S.D. Ind. 1997)

("Most of the courts that have addressed this issue have found that an award to a former spouse

of a portion of a debtor's pension benefit gives rise to a constructive trust relationship rather than

a debtor-creditor relationship, with the debtor serving as constructive trustee for the former wife's

benefit." (collecting cases)).

   Courts within this circuit have applied a constructive trust in similar situations.  In

*McCafferty*, the Sixth Circuit noted that 11 U.S.C. § 541(d) "has often been invoked as the basis

for excluding from a bankruptcy estate assets held in constructive trust by the debtor in favor of

another."  *McCafferty*, 96 F.3d at 196 (citing *XL/Datacomp, Inc. v. Wilson (In re Omegas Group,

Inc.)*, 16 F.3d 1443, 1448 (6th Cir. 1994) (other citations omitted). The *McCafferty* court then

distinguished the case before it from its prior decision in *Omegas Group* on the ground that

"*Omegas Group* would allow 'property already impressed with a constructive trust by a court in a

separate proceeding prepetition' to be excluded from a bankrupt's estate."  *Id.* at 197 (quoting

*Omegas Group*, 16 F.3d at 1451 (internal ellipses omitted)).  Finding that the wife had a separate

09-72986-tjt    Doc 88    Filed 09/03/10    Entered 09/03/10 14:58:11    Page 16 of 20

property interest, the *McCafferty* court then determined that under Ohio law a state court need

not expressly declare a constructive trust, because one "arises by operation of law to prevent

unjust enrichment." *Id.* at 198 (emphasis in original). The court held that "there clearly was

judicial action . . . in the form of a divorce decree . . . awarding specific property" to the

appellant-wife. *Id.* The court concluded:

> The [state] court having entered judgment for the stated amount as
> "a distribution of her interest" in the retirement plan, we believe
> [the husband] retained only a bare legal title in the designated
> portion of the plan's benefits and that [the wife] became the
> equitable owner of the retirement plan to that extent . . . Since it
> would result in an unjust enrichment for [the husband] to receive
> the entire value of the retirement benefits, a constructive trust arose
> to the extent of the interest awarded to [the wife]. The divorce
> decree provided the required judicial order.

*Id.* at 199; *see also McGraw*, 176 B.R. at 151 ("We agree that when a Debtor fails to turn over

property divided under a domestic relations court order, that propery may be subject to a

constructive trust or equitable lien in favor of the spouse.") (citing *Bush* and then distinguishing

*Omegas Group*); *Hines*, 2006 WL 3956493 at **4-5 (as "in *McCafferty*, the effect of the divorce

decree . . . was to impress a constructive trust upon [the wife's] interest in the retirement plan").

The same result follows in this case, where the consent judgment of divorce ordered

Debtor to pay Mytnick her $855 share of the pension payments each month until an EDRO was

entered. Under Michigan law, a "[c]onstructive trust is an equitable remedy which the court may

impose where the facts justify it." *In re Estate of Swantek*, 432 N.W.2d 307, 311 (Mich. Ct. App.

1988). "When property has been acquired in such circumstances that the holder of the legal title

may not, in good conscience, retain the beneficial interest, equity converts him into a trustee."

*Kent v. Klein*, 91 N.W.2d 11, 14 (Mich. 1958) (citation and quotation marks omitted). Further,

similar to the Ohio law examined in *McCafferty*, constructive trusts in Michigan "arise . . . by

operation of law." *Arndt v. Vos*, 268 N.W.2d 693, 695 (Mich. Ct. App. 1978) (citations omitted).

In this case, as in *McCafferty* and *Hines*, the state court impressed a constructive trust by its

judicial action ordering Debtor to directly convey one-half of the marital interest in the pension

to Mytnick, and to pay Mytnick $855 per month until an EDRO entered. Morever, courts faced

with similar situations, where no QDRO or other EDRO-type order was entered, have applied the

constructive trust doctrine to public pensions awarded in divorce decrees. *See*, *e.g.*, *Cullen v.*

*Cullen (In re Cullen)*, Nos. 95-B-25374, 99-A-621, 2000 WL 381929, at *4 (Bankr. N.D. Ill.

2000) (where no "Qualified Illinois Domestic Relations Order" entered, court finds that such is

not controlling as such orders "enforce preexisting property rights against an ERISA-qualified

pension plan" but do "not determine the nature of [the ex-wife's] interest in the marital portion"

of debtor-husband's public pension) (citing *Bigelow*)).

To conclude otherwise would permit Debtor "to manipulate the bankruptcy system as a

means to emasculate the decree of a state domestic relations court." *See McCafferty*, 96 F.3d at

200. Here, as in *Hines*, "[t]he Debtor [is] attempt[ing] to eliminate [Mytnick's] separate property

interest in the [pension] plan using the [Chapter 13] plan confirmation process." *See Hines*, 2006

WL 3956493 at **5. As stated by the Eighth Circuit,

> We doubt that Congress ever intended that a former wife's
> judicially decreed sole and separate property interest in a pension
> payable to her former husband should be subservient to the
> Bankruptcy Code's goal of giving the debtor a fresh start.

*Bush*, 912 F.2d at 994 (quoted in *McCafferty*, 96 F.3d at 200; *Hines*, 2006 WL 3956493 at **5).

**IV. Conclusion**

18

The 1999 state court consent judgment of divorce, upon entry, transferred a separate ownership interest to Pamela Mytnick in Debtor's pension. That transfer is unaffected by Michigan's EDRO Act, because that Act simply governs when a pension plan must directly pay an alternate payee part of a retiree's benefits. The fact that no EDRO was entered by the state court does not change Mytnick's ownership interest in her share of Debtor's pension. Furthermore, the consent judgment of divorce impressed upon Debtor a constructive trust for the benefit of Mytnick in the amount of $855 of the monthly pension payments.

For the reasons stated above, the Court concludes that there is cause to grant Mytnick relief from the automatic stay, and such relief from stay will be granted, to permit Mytnick to:

1. Ask the Oakland County Circuit Court to determine whether a valid EDRO may enter under Michigan law, and if so, to enter and enforce an EDRO.

2. Ask the state court to compel Debtor to comply with the 1999 consent judgment, by paying Mytnick $855 of the monthly pension payments Debtor receives each month *in the future*, and to enforce that obligation by contempt proceedings, if necessary.

3. Seek state court remedies, *other than* by collection from ***Debtor's bankruptcy estate***, for Debtor's *past* failures to comply with his obligations under the consent judgment to pay Mytnick $855 per month. This portion of the stay relief will permit Mytnick to seek collection from any funds traceable to Debtor's monthly pension benefit received from March 2009 — when Debtor stopped paying Mytnick her $855 per month share of Debtor's monthly pension benefit — through the present. Debtor holds $855 per month of any such funds in constructive trust for Mytnick's benefit.

19

To the extent Mytnick does not collect all of the $855 per month payments that Debtor

failed to make, pre-petition or post-petition, Mytnick has an unsecured claim against Debtor.  But

the Court leaves to another day other potential issues relating to such a claim, including whether

the claim is a Domestic Support Obligation ("DSO") within the meaning of 11 U.S.C.

§ 101(14A).[17]

The Court will enter an appropriate stay-relief order.

**Signed on September 3, 2010**                    **/s/ Thomas J. Tucker**
                                                    **Thomas J. Tucker**
                                                    **United States Bankruptcy Judge**

---

[17]  To the extent such a claim is a DSO, then:

1.  it is non-dischargeable under 11 U.S.C. §§ 1328(a)(2) and 523(a)(5);

2.  Debtor must pay the claim in full under any Chapter 13 plan if such plan is to be confirmable, *see* 11 U.S.C. §§ 1322(a)(2) and 507(a)(1)(A); and

3.  Debtor must pay all amounts that come due post-petition under the DSO in order to confirm a plan. *See* 11 U.S.C. § 1325(a)(8).